**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NO. 3:08-cr-00124-R**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

v.

**VINCENT A. LASHLEY**                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Suppress Evidence and Statements Obtained by Illegal Stop, Illegal Seizure and Illegal Arrest (DN 10). Plaintiff responded (DN 15), and a suppression hearing was held on January 22, 2008. This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

BACKGROUND

On September 3, 2007, at approximately 11:00 p.m., Defendant Vincent Lashley was standing in front of an apartment building at 1137 South 17th Street in Louisville, Kentucky. The property at 1137 South 17th Street is marked with "no trespassing" signs. Louisville Metro Police Officer Jeremy Ruoff was on patrol with his partner in the 1100 block of South 17th Street on the evening of September 3, 2007. The apartment buildings are part of Ruoff's normal beat. He testified that during a normal ten-hour shift he passes by the apartments approximately twenty to thirty times. He characterized the area where the apartment buildings are located as high crime, with a high level of narcotics trafficking and prostitution. Because Ruoff has been patrolling the area for approximately three years, he testified that he was familiar with the faces of many of the residents, and knew some by name.

As Ruoff and his partner drove northbound on 17th street, approaching Lashley, Ruoff

testified that Lashley turned and quickly walked away between the apartments. Ruoff exited the passenger side of the patrol car and followed Lashley, telling him to stop when Lashley was about ten or fifteen feet into the walkway. Ruoff testified that he stopped Lashley because, one, he did not recognize him, and two, the way that Lashley walked away from Ruoff in between the buildings was not a normal reaction. Ruoff stated that normally individuals he approaches in front of the apartment building do not walk away, instead they stay and speak with him.

Lashley stopped as Ruoff requested, but according to Ruoff as Lashley turned to face Ruoff, he kept reaching behind this back with his right hand. Ruoff testified that he asked Lashley two or three times to show his hands, but Lashley was slow in responding. At that point, Ruoff approached Lashley, grabbed his right hand, and in so doing felt the outline of a firearm tucked into Lashley's pants in the small of his back. After he found the firearm Ruoff placed Lashley under arrest. On November 3, 2008, a grand jury returned an Indictment charging Lashley with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (e), and a separate forfeiture count.

## DISCUSSION

Lashley argues that all evidence seized as a result of the stop and frisk made by Ruoff must be suppressed because Ruoff violated Lashley's Fourth Amendment rights. The Fourth Amendment prohibits "unreasonable searches and seizures" of individuals. U.S. Const. amend. IV. A law enforcement officer does not violate the Fourth Amendment by detaining someone briefly if the officer "possesses a reasonable and articulable suspicion that a person has been involved in criminal activity." *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004) (citation omitted); *see also Terry v. Ohio*, 392 U.S. 1 (1968).

An encounter between police and an individual is considered an investigatory "*Terry*" stop when "it is apparent from the circumstances that the individual was not free to ignore the officer and proceed on his way." *United States v. Pope*, 561 F.2d 663, 668 (6th Cir. 1977). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. When evaluating the validity of such an investigatory stop, a court "must consider 'the totality of the circumstances– the whole picture,'" *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (citation omitted), and determine whether the stop was objectively reasonable, *Terry*, 392 U.S. at 21. The Supreme Court has emphasized the totality of the circumstances test, explaining that "[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

"After detaining a person for a Terry stop, the officer may conduct a 'reasonable search for weapons . . . where he has reason to believe that he is dealing with an armed and dangerous individual.'" *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (quoting *Terry*, 392 U.S. at 27). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. Finally, when evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. *Pearce*, 531 F.3d at 381 (citing *Mapp v. Ohio*, 367 U.S. 643, 654 (1961)). "This exclusionary rule is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of

evidence which police derivatively obtain from an unconstitutional search or seizure." *Id.* (citations omitted).

Here, in response to a direct question of why he stopped Lashley, Ruoff articulated two reasons: (1) he did not recognize him, and (2) the way that Lashley walked away from Ruoff in between the buildings was not a normal reaction. During his testimony at the suppression hearing Ruoff also noted that the apartments are located in a high crime area and are marked with no trespassing signs, and that the encounter occurred around eleven o'clock at night.

To determine whether the evidence in this matter should be suppressed, the Court must first decide whether Ruoff possessed a reasonable and articulable suspicion that Lashley had been involved in criminal activity when Ruoff stopped him. In other words, is a stop objectively reasonable when an individual is standing in a high crime area late at night in front of apartments marked with a trespassing notice, is not recognized by an officer familiar with some of the residents, and then quickly walks away when a police car approaches. The Court finds that a limited investigatory stop in such circumstances is objectively reasonable.

The Supreme Court has recognized that a "high crime area" and "nervous, evasive behavior" are both pertinent factors in determining reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding stop reasonable when defendant fled upon seeing police in an area known for heavy narcotics trafficking); *see also Arvizu*, 534 U.S. at 275-76 (holding stop of vehicle reasonable based on factors including the driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer). The fact that an individual not recognized by an officer is standing in a no-trespass area may also be an additional factor in determining reasonable suspicion, especially when it is late at night, in a high crime area, and the

individual acts in an evasive manner. *See United States v. Horne*, No. 07-3394, 2008 WL 4949133, at *3 (6th Cir. 2008) (officers had reasonable suspicion to justify *Terry* stop based upon high crime area, late at night, by building marked no trespass, and individual "acted strangely by ducking behind" another individual in the group after officers told group to move if they were not residents); *United States v. Simmons*, 174 Fed. Appx. 913, 914 (6th Cir. 2006) (reasonable to stop an individual on suspicion of trespassing when officers did not recognize the individual, who had been standing on property marked no trespass, then immediately walked away, accompanied by two individuals who had previously been cited for trespassing); *United States v. Thomas*, 77 Fed. Appx. 862, 865 (6th Cir. 2003) (finding officer had reasonable suspicion that individuals, at 3:15 a.m. in heavy drug activity area, sitting on porch of woman who had called the previous week about trespassers on her porch, were trespassing).

  The scope of an investigatory stop must be related to the justification for the stop. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (citations omitted). Typically, if an officer reasonably suspects an individual has committed or is about to commit a crime, the officer may detain that person briefly and ask a "moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.* The Court finds that based on the totality of the circumstances, Ruoff was objectively reasonable in stopping Lashley. After he was told to stop, had Lashley not acted in such a way as to raise safety concerns, the stop likely would have been limited to Ruoff asking Lashley who he was and whether he was legitimately on the premises, and perhaps citing him for trespassing. But because Lashley was slow to show his hands, Ruoff was then justified in conducting a reasonable search for weapons.

5

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress Evidence and Statements Obtained by Illegal Stop, Illegal Seizure and Illegal Arrest is DENIED.